IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CLARK PAUYO | § | |
| | § | |
| | § | |
| v. | § | 2:11-CV-0016 |
| | § | |
| UNITED STATES OF AMERICA | § | |

## REPORT AND RECOMMENDATION
## TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant CLARK PAUYO has filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. For the reasons hereinafter expressed, the undersigned Magistrate Judge is of the opinion defendant's claims are without merit and should be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

On July 1, 2008, defendant was charged by complaint in the Northern District of Texas, Amarillo Division, with the felony offense of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The complaint's supporting affidavit alleged:

> On June 30, 2008, Texas Department Of Public Safety Trooper Mark Lancaster stopped a tractor trailer rig on Interstate 40 in Oldham County, Texas. The vehicle was stopped for having defective mud flaps which is a traffic violation. The driver and only occupant of the truck was Clark Pauyo. The bill of lading indicated Pauyo picked the truck up in Hayward, California, and was headed to Illinois and Pennsylvania. He stated the trailer held kitchen appliances. Pauyo was unusually slow and deliberate in answering Lancaster's questions. Upon reviewing the bill of lading and inspecting the seal on the back of the truck, Lancaster discovered that the number on the seal did not match the bill of lading. Pauyo told Lancaster he was aware of the problem with the numbers. Additionally Pauyo told Lancaster that he was making delivery in two different states, but had only one seal. Lancaster asked for consent to look in the trailer, and Pauyo gave consent.

>Lancaster opened the small vent door at the back of the trailer and smelled what he knew from his training as a trooper to be marijuana. A complete search revealed several pallets loaded with marijuana weighing approximately 1,400 kilograms. Marijuana is a Schedule I controlled substance.

On July 16, 2008, an indictment charging defendant PAUYO with possession with intent to distribute marijuana was returned.

On August 15, 2008, defense counsel filed a motion to suppress the evidence found as a result of the traffic stop arguing the stop was not justified, the search was not authorized, and the search and seizure were conducted in bad faith. The government responded, arguing (1) the stop was justified based on the trooper's observation of a traffic violation; (2) the length of the detention after the traffic stop was reasonable; (3) if the detention was prolonged, there was reasonable suspicion to justify the length of the detention; and (4) defendant's consent to the search was voluntary. On August 28, 2008, defense counsel supplemented his motion to suppress arguing (1) there was no probable cause for the traffic stop; (2) defendant's continued detention was unlawful; and (3) any consent given by defendant was tainted by the illegal detention. Attached to the supplement was the defense's transcription of the conversation between the trooper and defendant "on the consent question."

In its supplemental response, the government attached a transcription of the conversation between the trooper and defendant transcribed by a DEA agent and Trooper Lancaster which provided:

>Trooper:   That's not even the seal that's on here?
>
>Defendant: No . . . well I don't know cause the guy said there was no seal when I asked him cause there was like more than one . . . more than one stop more than one um pickup.
>
>Trooper:   Yeah.

| | |
|---|---|
| Defendant: | And he just said yeah . . . said there was a shipment of paperwork but there's nothing so I don't know? |
| Trooper: | You don't have any uh problem at me lookin' into it there, do you? |
| Defendant: | In where? |
| Trooper: | You don't have any problem in me lookin' in there (Trooper points at trailer), do you? |
| Defendant: | Unt uh. (meaning no) |
| Trooper: | You don't have a problem . . . so do I have your permission to open it up? |
| Defendant: | I mean I don't actually have a problem . . . I don't understand. |
| Trooper: | Well, it's not the right seal number. |
| Defendant: | Yeah. |
| Trooper | I can put another seal on it. |
| Defendant: | Yeah. |
| Trooper: | If you want to do that . . . If you want to do that? |
| Defendant: | Yeah. |
| Trooper: | You don't have any objections? |
| Defendant: | No. |
| Trooper: | Ok. |
| Trooper: | You only have one piece of paper that has the seal number on it? |
| Defendant: | That's the thing it's what I don't know. |
| Trooper: | Be right back. |
| Defendant: | Uh huh. (meaning ok). |
| Trooper: | You have a key to that lock? |

    Defendant:    Yeah, it's in the truck.

    Trooper:    Go ahead and get it please.

The Government argued there were no coercive police measures rendering defendant's consent coerced or involuntary, and further argued all relevant factors indicated defendant's consent to the search was voluntary. At an evidentiary hearing on the motion to suppress, defense counsel continued to argue any consent given by defendant was tainted because of preceding actions which were illegal, but "conceded that if the stop was reasonable at its inception and continued to be reasonable through the time consent was given, then defendant's consent appeared voluntary."

On August 29, 2008, the undersigned entered a Report and Recommendation finding (1) there was probable cause for the traffic stop; (2) defendant's short period of detention was not unreasonable; and (3) the trooper had reasonable suspicion to further investigate. The undersigned found nothing indicated the trooper used an intimidating demeanor with defendant at any time and that defendant's consent to the search was, in fact, voluntary and was not tainted by any unlawful detention. The undersigned recommended the motion to suppress be denied. Defense counsel filed extensive objections to the Report and Recommendation, including a specific objection to the Court's conclusion that defendant's consent to search was voluntary, arguing such consent was tainted by the prior Fourth Amendment violation. The government was ordered to file a response to defendant's objections to the Report and Recommendation even as both parties were preparing for a jury trial. In its response, the government maintained defendant's consent was voluntary and was not the product of an illegal detention. The District Judge overruled defendant's objections, adopted the Report and Recommendation and denied defendant's motion to suppress.

After a jury trial, defendant was found guilty of the offense as charged. A Presentence Report recommended an advisory guideline range of 121 to 151 months imprisonment. On December 17, 2008, defendant was sentenced to 120 months imprisonment in the Federal Bureau of

Prisons, a sentence below the guideline range and which was the minimum mandatory sentence for the offense.

Defendant, represented by the same counsel as at trial, filed a direct appeal challenging the denial of his pretrial motion to suppress arguing "his detention following the initially valid traffic stop was unconstitutionally prolonged and that his consent to the search of his tractor-trailer was not valid." The United States Court of Appeals for the Fifth Circuit found defendant's detention was not unconstitutionally prolonged. As relevant here, the Fifth Circuit also reviewed this court's finding that defendant's consent was voluntary and, finding "there were sufficient facts that together support the voluntariness of [defendant's] consent," found no clear error in this court's determination that defendant's consent was voluntary. On August 18, 2009, the Fifth Circuit affirmed defendant's conviction. *United States v. Pauyo*, No. 08-11218. On March 29, 2010, the United States Supreme Court denied certiorari. *Pauyo v. United States*, 130 S.Ct. 2079 (2010).

On January 21, 2011, defendant filed the instant motion challenging his conviction and sentence. On March 17, 2011, the government filed a response in opposition to the motion to vacate together with an affidavit of trial counsel responding to the allegations raised in defendant's motion. On April 6, 2011, defendant filed a reply to the government's response.

II.
DEFENDANT'S ALLEGATIONS

In his motion to vacate, defendant appears to argue his conviction and sentence are unconstitutional because:

1. Defendant was denied effective assistance of trial counsel because counsel did not argue, in the motion to suppress, that defendant's consent to search was involuntary due to the trooper's deception or trickery, or that defendant's acquiescence did not amount to consent to search the trailer but only to putting a new seal on the trailer; and

2. Defendant was denied effective assistance of appellate counsel because counsel did not:

    A. Raise a claim of involuntary consent due to deception, or lack of consent to search the trailer on appeal; or

    B. Raise a claim of ineffective assistance of trial counsel for advising defendant to go to trial rather than plead guilty.

## III.
## STANDARD OF REVIEW

In its response, the government fully and accurately sets out, at pages 3-5, the appropriate standard of review for motions brought under 28 U.S.C. § 2255, as well as the limitations to granting relief on such motions. Those standards and limitations are applicable.

## IV.
## EFFECTIVENESS OF COUNSEL

The proper standard for judging a defendant's contention that he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* standard, a defendant must show counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to a criminal defendant by the Sixth Amendment to the United States Constitution. In order to amount to ineffective assistance of counsel, counsel's performance must have fallen below an objective standard of reasonableness as determined by the norms of the profession. Counsel's performance is reviewed from counsel's perspective at the time of trial, not from hindsight. *Id.* at 689. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*

A defendant must also show he was prejudiced by counsel's deficient performance. To establish this prong, defendant must show counsel's errors were so serious as to deprive defendant of a fair trial. Specifically, defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different or that the errors were so serious as to deprive the defendant of a fair trial with a reliable result." *Id.* at 694.

### A. Trial Counsel

Defendant contends the transcription of the dialogue between the trooper and himself during the traffic stop showed the trooper intentionally "tricked and misled [defendant] into believing . . . he was agreeing to have a new seal placed on the trailer, not a search." Defendant contends the phrasing of the trooper's request amounted to misrepresentation, deception or trickery rendering his consent involuntary. Defendant also contends a reasonable person would have believed he or she was only consenting to a new seal being placed on the trailer when agreeing to the trooper's request and, thus, there was no consent to search the trailer.

In his first ground, defendant contends counsel was ineffective because counsel did not argue the consent to search was involuntary because it was given in response to the trooper's misleading inquiries. Defendant contends that had trial counsel "properly" argued defendant's consent was involuntary because of the trooper's misrepresentation, deception or trickery, the evidence would have been suppressed.

The transcription of the exchange between the defendant and the trooper, as well as the testimony elicited during the suppression hearing, does not establish defendant's consent was obtained through deception or trickery, nor does it show the trooper made any misrepresentations to defendant, or that the trooper intentionally misled the defendant to obtain consent. Assuming for purposes of argument that some part of the trooper's statements might have been unclear, defendant

has not shown any taint rose to a level sufficient to render defendant's consent involuntary. The trooper clearly indicated he was seeking to "open" the trailer and "look" in it, and asked for a key to the lock. If defendant misunderstood the trooper's request, he did not voice any confusion nor make any objection to the trooper's request for the key to the lock or to the trooper's opening of the trailer. When the trooper initiated his search, defendant did not limit the scope of the search or retract any perceived consent to search. Defendant has not shown there was any argument trial counsel could have made that defendant's consent was involuntary due to either a misunderstanding or due to intentional misrepresentations, which would have been successful and resulted in suppression of the evidence. Consequently, defendant has not demonstrated counsel was deficient for failing to make such an argument in the suppression motion, or that defendant was prejudiced by such failure.

Defendant also argues trial counsel should have argued, in the motion to suppress, that a reasonable person would have believed he or she was only consenting to a new seal being placed on the trailer when agreeing to the trooper's request and, therefore, the trooper did not have consent to search the trailer. Defendant contends such an argument would have been successful and that trial counsel's failure to make such an argument was deficient.

When consent is the basis for a warrantless search, the officer has no more authority than has "apparently been given by the consent." *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666 (5th Cir. 2003). The standard of measuring the extent or scope of a suspect's consent is "that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Essentially, was it objectively reasonable for the trooper to believe the defendant consented to the opening of the trailer. The undersigned finds the trooper was reasonable in perceiving defendant gave his general consent to open and search the trailer. The

reasonableness of the trooper's understanding is bolstered by the fact that defendant's consent was given without qualification and defendant registered no objection to the search. Any argument by trial counsel that the trooper was not reasonable in interpreting defendant's statements as giving consent to search would not have been successful. Defendant has not demonstrated counsel was deficient for failing to make such an argument in his suppression motion, or that defendant was prejudiced by such failure. This first ground should be DENIED.

B. Appellate Counsel

Defendant next argues he was denied effective assistance of appellate counsel because counsel did not raise a claim of involuntary consent due to deception, or lack of consent to search the trailer. For the same reasons petitioner cannot show trial counsel was ineffective for failing to raise and argue such grounds, petitioner cannot show appellate counsel was ineffective for failing to raise such grounds on appeal. Defendant's argument is without merit and should be DENIED.

Defendant also argues appellate counsel was ineffective because he did not raise a claim of ineffective assistance of trial counsel for advising defendant to go to trial rather than plead guilty after his suppression motion was denied. Defendant contends trial counsel's advice to proceed to trial, "in the face of overwhelming evidence," was deficient[1] and resulted in defendant losing (1) a 3-level reduction for acceptance of responsibility, and (2) the "safety valve" reduction set forth in 18 U.S.C. § 3353(f).[2] Defendant argues appellate counsel should have raised these ineffective

---

[1] Defendant now asserts this argument even though, as discussed below, defendant maintained his innocence during the pre-trial proceedings and trial.

[2] A court may disregard the statutory minimum and impose a sentence pursuant to the guidelines if, in short, the defendant (1) does not have more than 1 criminal history point, (2) did not use violence or a dangerous weapon, and (3) was not an organizer or leader; and if (4) the offense did not result in death or serious bodily injury, and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense.

assistance of trial counsel claims on direct appeal, that counsel was deficient for failing to do so, and that such deficiency prejudiced defendant on appeal.

This claim initially fails because defendant has not shown the ineffective assistance of trial counsel claim (of trial counsel's misadvising defendant to go to trial) could have even been raised on direct appeal. Generally the appellate courts will not entertain an ineffective assistance of counsel claim on direct appeal if the claim has not been raised at the trial court level and the record fully developed to support such a claim. *See United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987). Defendant has not shown this claim was raised before the trial court or that the record contains adequate development of the issue. Defendant's argument should be DENIED.

Even if appellate counsel could have presented this claim of ineffective assistance of trial counsel on direct appeal, defendant cannot show he was prejudiced by counsel's failure to do so. Specifically, defendant cannot show such a ground would have been successful on appeal because defendant cannot demonstrate he was prejudiced by trial counsel's advice to plead not guilty to the charges. First, after defendant's case was tried to a jury, the court sentenced defendant to the statutory minimum-mandatory sentence. Pleading guilty and receiving a 3-level reduction for acceptance of responsibility in the Presentence Report calculations would not have impacted defendant's eventual sentence since he received the minimum sentence available, *i.e.*, the lowest sentence he could receive. Secondly, defendant was not denied a "safety valve" reduction due to his election to proceed to a jury trial rather than entering a guilty plea. The "safety valve" provision in 18 U.S.C. § 3553(f) does <u>not</u> require that a defendant plead guilty. Rather, as relevant here, application of the "safety valve" provision simply requires that the defendant truthfully provide to the Government all information and evidence the defendant has concerning his offense, if any, prior to the sentencing hearing. Defendant's failure to plead guilty did not affect application of the

"safety valve" provision. Since defendant was not prejudiced by trial counsel's advice to proceed to trial, defendant cannot show appellate counsel was deficient for failing to raise such a claim on direct appeal or that he was prejudiced by appellate counsel's failure to do so. Defendant's ground is without merit and should be DENIED.

### C. Additional Claim in Reply

In his reply to the government's response, defendant adds a claim (in rebuttal to the "government's theory that [defendant] could have received the safety-valve reduction even though he [did not plead guilty but] proceeded to trial"), that trial counsel was ineffective for failing to advise defendant, after being found guilty at trial, of the "safety valve" reduction and what it would take to receive it, and failing to seek such a reduction on defendant's behalf. Defendant contends counsel never advised him of the "safety valve" reduction or that he could still receive it even though he went to trial, and that such deficiency denied defendant the opportunity to receive the "safety valve" reduction.

The undersigned initially notes defendant was advised, in the Order to Show Cause entered January 25, 2011, that any statement or argument set forth in a reply would not be considered to advance a new ground for relief. By this claim, defendant now asserts a new ground of ineffective assistance of trial counsel. Such claim is not properly before this Court. Even so, in the interest of justice, the undersigned addresses defendant's claim below.

In his affidavit, trial counsel states he discussed with defendant "the availability of the safety valve reduction *if he entered a plea of guilty* and chose to give the government a full and truthful account of the information and evidence he had concerning the offense for which he was charged or any other offense that was part of the same course of conduct or of a common scheme or plan."

*Declaration of Kent Paschal*, March 4, 2011 at 2 (emphasis added). This statement does not support a finding by the Court that counsel advised defendant he could still avail himself of the "safety valve" reduction, even though he went to trial. Counsel, however, also avers defendant "always maintained his innocence," "continued to claim he was innocent," and "insisted he was innocent." *Id.* Defendant PAUYO has not refuted counsel's affidavit and statement that he asserted to counsel that he was innocent of the offense and, presumably, had no information or evidence concerning the offense. Even now, defendant does not state what information he would have provided to the government or how he would have otherwise qualified for a "safety valve" reduction. Even if trial counsel was deficient in failing to advise defendant he could still attempt to qualify for the "safety valve" reduction (despite his adamant assertion of innocence), defendant has not shown he would have truthfully provided the government with all information and evidence he had concerning his offense. Further, defendant has not shown the Court would have given him such a "safety valve" reduction, and therefore has not shown he was prejudiced by any failure of trial counsel. The prejudice necessary for a finding of ineffective assistance of counsel cannot be based upon speculation. Defendant is not entitled to relief on this claim.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by defendant CLARK PAUYO should be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

    IT IS SO RECOMMENDED.

    ENTERED this ___14th___ day of February 2014.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C) or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).